Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff and all others similarly situated*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL BELL individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GLAXOSMITHKLINE CONSUMER HEALTHCARE HOLDINGS (US) LLC, GSK CONSUMER HEALTH, INC., and PFIZER, INC.<br><br>*Defendants*. | Case No. 2:21-cv-09454-GW-AFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1

## **Table of Contents**

I.     Introduction. ................................................................................................ 1

II.    Parties. ........................................................................................................ 1

III.   Jurisdiction and Venue. ............................................................................. 2

IV.    Facts. .......................................................................................................... 3

      A.     Defendants make, market, and sell Robitussin products prominently
           labeled "Non-Drowsy." ................................................................... 3

      B.     The Non-Drowsy Robitussin Products cause drowsiness. ................... 7

      C.     Defendants' Non-Drowsy representations misled reasonable consumers. ............ 8

      D.     Plaintiff was misled by Defendants' misrepresentations. ..................... 11

      E.     Class Action Allegations. ................................................................. 12

V.     Causes of Action ...................................................................................... 14

VI.    Jury Demand. ........................................................................................... 25

VII.   Prayer for Relief. ...................................................................................... 25

## I.      Introduction.

1.      Defendants make, sell, and market "Robitussin" over-the-counter cough medicine.  Several Robitussin products contain the active ingredient Dextromethorphan Hydrobromide ("DXM").  At least 16 Robitussin products containing DXM prominently state on the front of their label that they are "Non-Drowsy." [1]

2.      By prominently labeling these products as "Non-Drowsy," Defendants led Plaintiff and other consumers to believe that the Non-Drowsy Robitussin Products do not cause drowsiness, and that drowsiness is not a side effect of those products. But the truth is that products containing DXM—and thus the Non-Drowsy Robitussin Products—do cause drowsiness, and that drowsiness is a known side effect of DXM.

3.      In this way, Defendants misled Plaintiff and other consumers about the effects of the Non-Drowsy Robitussin Products.  This was a material misrepresentation that Plaintiff—and other reasonable consumers—relied on when deciding to buy the products.  Had Defendants been truthful, Plaintiff and other consumers would not have purchased the products or would have paid less for them.

4.      Plaintiff brings this case for himself and for millions of other consumers who purchased Non-Drowsy Robitussin Products.

## II.      Parties.

5.      Plaintiff Paul Bell is a citizen of California (domiciled in Los Angeles). The proposed class (identified below) includes citizens of every state within the United States.

6.      Defendant GlaxoSmithKline Consumer Healthcare Holdings (US) LLC is a Delaware corporation with its principal place of business in Warren, New Jersey, and has been doing business in the State of California during all relevant times.

---

[1] Throughout this Complaint, Robitussin products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy Robitussin Products."

Directly and through its agents, GlaxoSmithKline Consumer Healthcare Holdings (US) LLC has substantial contacts with, and receives substantial benefits and income from, the State of California.

7.    Defendant GSK Consumer Health, Inc. is a Delaware corporation with its principal place of business in Warren, New Jersey, and has been doing business in the State of California during all relevant times.  Directly and through its agents, GSK Consumer Health, Inc. has substantial contacts with, and receives substantial benefits and income from, the State of California. [2]

8.    Defendant Pfizer, Inc. is a Delaware corporation with its principal place of business in New York, New York, and has been doing business in the State of California during all relevant times.  Directly and through its agents, Pfizer, Inc. has substantial contacts with, and receives substantial benefits and income from, the State of California.

**III.   Jurisdiction and Venue.**

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendants.

10.    The Court has personal jurisdiction over Defendants because they sold the Non-Drowsy Robitussin Products to consumers in California, including Plaintiff.

11.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendants would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendants sold the Non-Drowsy Robitussin Products to consumers in this District, including Mr. Bell.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct

---

[2] This Complaint uses "GSK" to refer collectively to GlaxoSmithKline Consumer Healthcare Holdings (US) LLC and GSK Consumer Health, Inc.

giving rise to the claims occurred in this District, including selling the Non-Drowsy Robitussin Products to Mr. Bell.

**IV.    Facts.**

> **A.    Defendants make, market, and sell Robitussin products prominently labeled "Non-Drowsy."**

12.    GSK manufactures, distributes, markets, and sells the Non-Drowsy Robitussin Products, and has done so since mid-2019.  Prior to that, Pfizer manufactured, distributed, marketed, and sold the Non-Drowsy Robitussin Products.

13.    According to Pfizer's filings in other cases, Pfizer "no longer owns the rights to the Products, and any potential liability it may have had for the Products has been transferred to GSK pursuant to a Stock and Asset Purchase Agreement." Defendants' Answer to Plaintiff's First Amended Class Action Complaint at 1-2, *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,  4:20-cv-09077-JSW (N.D. Cal. Aug. 20, 2021).   If this representation is true, GSK is responsible, and liable, for the distribution, marketing, and sale of the Non-Drowsy Robitussin Products at all relevant times. [3]

14.    In the alternative, GSK is responsible, and liable, for the distribution, marketing, and sale of the Non-Drowsy Robitussin Products since mid-2019, and Pfizer is responsible, and liable, for such distribution, marketing, and sale beforehand.

15.    The Non-Drowsy Robitussin Products that Defendants distributed, marketed, and sold, and continue to distribute, market, and sell, include: Robitussin Honey Cough + Chest Congestion DM; Robitussin Maximum Strength DM Day/Night Pack; Robitussin Maximum Strength DM Day/Night Pack; Robitussin Maximum Strength Severe Multi-Symptom Cough Cold + Flu; Robitussin Maximum Strength Severe Multi-Symptom Cough Cold + Flue Pack; Robitussin Maximum

---

[3] If GSK stipulates that it will assume all liability for the accused acts throughout the relevant timeframe, Plaintiff is willing to dismiss Pfizer from the case.

Strength Sever Cough + Sore Throat; Robitussin Maximum Strength Cough & Chest Congestion DM Capsules; Robitussin Cough + Congestion DM; Robitussin Sugar Free Cough + Chest Congestion DM; Robitussin Multi-Symptom Cold CF; Robitussin Long-Acting CoughGels; Robitussin Maximum Strength Honey Severe Cough, Flu + Sore Throat, Robitussin Children's Cough & Chest Congestion DM; Robitussin Children's Cough & Cold CF; Robitussin Children's Honey Cough & Chest Congestion DM; and Robitussin Children's DM Day/Night Pack.

16.     The front label of each Non-Drowsy Robitussin Product prominently states that the product is "Non-Drowsy."  For example:

**Multi-Symptom Cough Cold + Flu** [4]



---

[4] https://www.robitussin.com/adult-robitussin/maximum-strength-severe-multi-symptom-cough-cold-flu/

**Cough + Chest Congestion DM** [5]



**Multi-Symptom Cold CF** [6]



---

[5] https://www.robitussin.com/adult-robitussin/maximum-strength-cough-chest-congestion-dm-liquid-filled-capsules/

[6] https://www.robitussin.com/adult-robitussin/multi-symptom-cold-cf/

**Children's Cough & Chest Congestion DM** [7]



17.     These representations are materially the same across all Non-Drowsy Robitussin Products.

18.     The Non-Drowsy Robitussin Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect of the Non-Drowsy Robitussin Products.

19.     Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is *not* a side effect of the product.

20.     Indeed, Defendants labeled the products this way because they intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

---

[7] https://www.robitussin.com/childrens-robitussin/cough-chest-congestion-dm/

**B.**     **The Non-Drowsy Robitussin Products cause drowsiness.**

21.     In truth, products containing DXM—like each of the Non-Drowsy Robitussin Products—do cause drowsiness.  Drowsiness is a documented side effect of DXM at the recommended dosages.  Authorities such as the Mayo Clinic [8] and the National Library of Medicine [9] list drowsiness as a side effect of DXM.

22.     Indeed, drowsiness is a relatively common (not rare) side effect at the recommended dosages.  According to a 2017 GSK presentation on drug labeling, a "common" adverse reaction (i.e., side effect) is one that occurs in 3% or more drug takers and a "very common" side effect occurs in 10% or more drug takers.  And a study of DXM found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [10]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And the patients in this clinical study were given an even smaller dosage of DXM (15 mg three times a day) than the recommended dose found in many Non-Drowsy Robitussin products. [11]

---

[8] https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-20068661?p=1 (last accessed November 22, 2021).

[9] Dextromethorphan: MedlinePlus Drug Information, National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed November 22, 2021).

[10]  E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997). The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy." Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence (last accessed November 22, 2021).

[11] For example, Robitussin Cough + Chest Congestion DM contains 20 mg of DXM per 20 ml of syrup and the recommended dosage is 20 ml orally every 4 hours. https://www.robitussin.com/adult-robitussin/cough-chest-congestion-dm/

23.    Furthermore, the FDA's adverse event report database confirms that sedation (i.e., drowsiness) was the fourth-most frequently cited central nervous system side effect of dextromethorphan-containing products. [12]

24.    For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting DXM: [13]



| | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives** after the last dose (see above). |
|---|---|---|---|---|
| **Cough** | | | | |

## C.    Defendants' Non-Drowsy representations misled reasonable consumers.

25.    The Food and Drug Administration prohibits drug labeling that is "false or misleading."  21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

26.    Based on the fact that Defendants label the Non-Drowsy Robitussin Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products.  Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't

---

[12] Drowsiness is equivalent to minimal sedation.  *See* https://www.medicinenet.com/sedation_vs_general_anesthesia/article.htm
[13] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

make you sleepy." [14] This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness." [15]

27.     Robitussin's advertisements and labeling do not contain any language that a reasonable consumer would understand to qualify these representations, or that would otherwise put a reasonable consumer on notice of the fact that the Non-Drowsy Robitussin Products actually cause drowsiness.

28.     Unlike Defendants, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth:



29.     Defendants could have simply omitted the false and misleading statement, "Non-Drowsy," from their products.

30.     Or, if Defendants wanted to say something to indicate that a Non-Drowsy Robitussin Product might cause *less* drowsiness than another Robitussin

---

[14] "How to read over the counter (OTC) drug labels," Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm
[15] https://www.merriam-webster.com/medical/nondrowsy

product, they could have made a truthful statement to this effect, as other drug makers do.

31.     For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":



32.     Because Defendants make and sell the Non-Drowsy Robitussin Products, Defendants researched the known and common side effects of DXM.  This is diligence that large companies like Defendants would do when selling a drug.  As a result, Defendants knew that DXM causes drowsiness.  Furthermore, Defendants control their labeling, knowingly put on the "Non-Drowsy" representations, and know the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendants' testing would confirm that "Non-Drowsy" is misleading.  For these reasons, Defendants knew that their labeling was false and misleading, or were reckless or willfully blind to this fact.  And as alleged above, Defendants intended that consumers would rely on the "Non-Drowsy" labeling, so that consumers would purchase more products and pay a price premium.

33.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert, or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving, or flying a plane, is dangerous.

34.     Defendants' false statements increased the demand for Non-Drowsy Robitussin Products and allowed Defendants to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving).  As a result, Defendants were able to charge more for these products than they would have been able to had the labeling been truthful.  Accordingly, as a direct result of Defendants' false statements, Defendants were able to charge a price premium for these products.  As purchasers, Plaintiff and each class member paid this price premium and sustained economic injury.

**D.      Plaintiff was misled by Defendants' misrepresentations.**

35.     In 2021, Plaintiff Mr. Bell bought a bottle of Robitussin Cough + Chest Congestion DM (a Non-Drowsy Robitussin Product) at a Walgreens in Los Angeles.  When buying the product, Mr. Bell saw and relied on Defendants' promise that it was "Non-Drowsy."  But when Mr. Bell took the medication, he became unexpectedly drowsy at work.  Mr. Bell would not have bought the product had he known that the product did, in fact, cause drowsiness, and that drowsiness was a known side effect of the product.

36.     To be sure, Plaintiff would purchase Non-Drowsy Robitussin Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised). Plaintiff, however, faces an imminent threat of harm because he will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

**E.      Class Action Allegations.**

37.     Plaintiff brings the asserted claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy Robitussin Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

38.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in certain identified states (the "**Consumer Protection Subclass**").

39.     For certain claims, in the alternative, Plaintiff brings those claims on behalf a subclass of consumers who, like Plaintiff, purchased Non-Drowsy Robitussin Products in California (the "**California Subclass**").

40.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

41.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are millions of proposed class members.

*Commonality*

42.     There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- Whether the Non-Drowsy Robitussin Products cause drowsiness;
- Whether Defendants' labelling of the Non-Drowsy Robitussin Products as "non-drowsy" is deceptive and misleading;
- Whether Defendants violated state consumer protection statutes;
- Whether Defendants committed a breach of express warranty; and,
- Damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality***

43.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Non-Drowsy Robitussin Products.  Like the proposed class, Plaintiff would not have purchased the products, or would have paid less for them, had he known that they cause drowsiness.

***Predominance and Superiority***

44.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

45.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core liability question is common: whether Defendants breached an express warranty by

falsely marketing products that cause drowsiness as "Non-Drowsy."

46.   A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.   Causes of Action**

**<u>Count I: Breach of Express Warranty</u>**

**(on behalf of Plaintiff and a Nationwide Class)**

47.   Plaintiff incorporates by reference each and every factual allegation set forth above.

48.   Plaintiff brings this cause of action on behalf of himself and the Nationwide Class.

49.   Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers of the Non-Drowsy Robitussin Products, issued written warranties by representing that the products were "Non-Drowsy."  This was an affirmation of fact about the products (i.e., a description of the effects) and a promise relating to the goods.

50.   This warranty was part of the basis of the bargain and Plaintiff and members of the Nationwide Class relied on this warranty.

51.   In fact, the Non-Drowsy Robitussin Products do not conform to the above-referenced representation because they cause drowsiness and thus the warranty was breached.

52.   Plaintiff and members of the Nationwide Class were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

53.     Because Plaintiff purchased from a third-party pharmacy and did not purchase directly from Defendants, pre-suit notice is not required.  In any case, Plaintiff mailed Defendants a written notice of their breach of warranty, and demand for correction, on December 7, 2021 and this notice was delivered on December 9, 2021.  On January 14, 2022, Defendants responded and refused to take any corrective action.

## Count II: Violations of State Consumer Protection Acts
### (on behalf of Plaintiff and the Consumer Protection Subclass)

54.     Plaintiff incorporates by reference each and every factual allegation set forth above.

55.     This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
| --- | --- |
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |

| | |
|---|---|
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |
| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the |

| | |
|---|---|
| | following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |
| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |

| Wisconsin | Wis. Stat. § 100.18, and the following |
|-----------|----------------------------------------|
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

56.     Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendants' conduct, including the false labelling of the Non-Drowsy Robitussin Products and sale of those misleading products to Plaintiff and Class members, violates each statute's prohibitions.

57.     Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members.  Defendants' misrepresentations were misleading to a reasonable consumer, and Plaintiff and Class members reasonably relied on Defendants' misrepresentations.

58.     Defendants intended that Plaintiff and the proposed Class members would rely on their materially deceptive representations.  Defendants were also aware of the side effects of DXM and thus knew that their representations were false and were likely to mislead consumers.

59.     For applicable statutes, Plaintiff mailed Defendants a written notice and demand for correction on December 7, 2021 and this notice was delivered on December 9, 2021.  On January 14, 2022, Defendants responded and refused to take any corrective action.  Plaintiff and the Subclass now seek all available monetary and injunctive relief.

60.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.  In this way, Plaintiff and the proposed Class members have suffered an ascertainable loss, in an amount to be determined at trial.

18

**Count III: Violation of California's Unfair Competition Law (UCL)**

**(on behalf of Plaintiff and the California Subclass)**

61.   Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

62.   As alleged in Count II, state consumer protection laws are sufficiently similar such that Plaintiff may bring a claim on behalf of the Consumer Protection Subclass.  In the alternative, Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

63.   Defendants have violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

64.   Defendants engaged in unlawful conduct by violating the CLRA and FAL, as alleged below and incorporated here.

***The Fraudulent Prong***

65.   As alleged in detail above, Defendants' "Non-Drowsy" representations were false and misleading.  These representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

***The Unfair Prong***

66.   Defendants violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

67.   The harm to Plaintiff and the Class greatly outweighs the public utility of Defendants' conduct.  There is no public utility to misrepresenting the side effects of an over-the-counter medication.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading medication labels only injure healthy competition and harm consumers.

68.    Plaintiff and the Class could not have reasonably avoided this injury.  As alleged above, Defendants' representations were deceiving to reasonable consumers like Plaintiff.

*  *  *

69.    For all prongs, Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Robitussin Products.  Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

70.    In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Robitussin Products.

71.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members

72.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

## Count IV: Violation of California's False Advertising Law (FAL)
### (on behalf of Plaintiff and the California Subclass)

73.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above.

74.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

75.    As alleged more fully above, Defendants have falsely advertised Non-Drowsy Robitussin Products by falsely representing that the products do not cause drowsiness and that drowsiness is not a side effect of the products.

76.    Defendants' representations were likely to deceive, and did deceive,

Plaintiff and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

77.    Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Robitussin Products.  Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

78.    In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Robitussin Products.

79.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

80.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

## Count V: Violation of California's Consumer Legal Remedies Act (CLRA)
### (on behalf of Plaintiff and the California Subclass)

81.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above.

82.    Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

83.    Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

84.    Plaintiff, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

85.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

86.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff and the other members of the California Subclass that the Non-Drowsy Robitussin Products do not cause drowsiness, and that drowsiness is not a side effect of the products, when in fact, the products do cause drowsiness.

87.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

88.     Defendants' representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendants knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

89.     Defendants' misrepresentations were intended to induce reliance, and Plaintiff saw, read and reasonably relied on them when purchasing Non-Drowsy Robitussin Products.  Defendants' misrepresentations were a substantial factor in Plaintiff's purchase decision.

90.     In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Robitussin Products.

91.     Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members.

92.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

93.     Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

94.     CLRA § 1782 NOTICE.  On December 7, 2021, a CLRA demand letter was sent to Defendants' headquarters and California registered agents, via certified mail (return receipt requested) that provided notice of Defendants' violations of the CLRA and demanded that Defendants correct the unlawful, unfair, false and/or deceptive practices alleged here.  This letter arrived on December 9, 2021. Defendants did not respond within 30 days of receipt.  Then, on January 14, 2022, Defendants responded and refused to take any corrective action.  Accordingly, Plaintiff and the Subclass now seek all available damages under the CLRA (in addition to an injunction, reasonable attorney fees, and all other available relief).

## **Count VI: Negligent Misrepresentation**

### **(on behalf of Plaintiff and the Nationwide Class)**

95.     Plaintiff incorporates by reference the facts alleged above.

96.     Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

97.     As alleged in detail above, Defendants' labeling represented to Plaintiff and Class members that the Non-Drowsy Robitussin Products do not cause drowsiness and that drowsiness is not a side effect of these products.

98.     These representations were false. As alleged above, the Non-Drowsy Robitussin Products do cause drowsiness and drowsiness is a documented side effect.

99.     When Defendants made these misrepresentations, they knew or should have known that they were false.  Defendants had no reasonable grounds for believing that these representations were true when made.

100.    Defendants intended that Plaintiff and Class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

101.   In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Robitussin Products.

102.   Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

103.   Plaintiff and Class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

### Count VII: Intentional Misrepresentation
### (on behalf of Plaintiff and the National Class)

104.   Plaintiff incorporates by reference the facts alleged above.

105.   Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

106.   As alleged in detail above, Defendants' labeling represented to Plaintiff and Class members that the Non-Drowsy Robitussin Products do not cause drowsiness and that drowsiness is not a side effect of these products.

107.   These representations were false and misleading.  As alleged above, the Non-Drowsy Robitussin Products do cause drowsiness and drowsiness is a documented side effect.

108.   As alleged in detail above, when Defendants made these misrepresentations, they knew that they were false, were reckless to the truth, or were willfully blind.

109.   Defendants intended that Plaintiff and Class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

110.    In addition, classwide reliance can be inferred because Defendants' misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Robitussin Products.

111.    Defendants' misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

112.    Plaintiff and Class members were injured as a direct and proximate result of Defendants' conduct because (a) they would not have purchased Non-Drowsy Robitussin Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

### Count VIII: Quasi-Contract / Unjust Enrichment

### (on behalf of Plaintiff and the Nationwide Class)

113.    Plaintiff incorporates by reference the facts alleged above.

114.    Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

115.    As alleged in detail above, Defendants' false and misleading labeling caused Plaintiff and the Class to purchase Non-Drowsy Robitussin Products and to pay a price premium for these products.

116.    In this way, Defendants received a direct and unjust benefit, at Plaintiff's expense.

117.    Plaintiff and the Nationwide Class seek restitution.

## VI.    Jury Demand.

118.    Plaintiff demands a jury trial on all issues so triable.

## VII.    Prayer for Relief.

119.    Plaintiff seeks the following relief for himself and the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;
- Damages, including statutory, treble, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendants' deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

Dated: January 18, 2022                    Respectfully submitted,

                                           By: */s/ Jonas B. Jacobson*
                                           Jonas B. Jacobson (Cal. Bar No. 269912)
                                           jonas@dovel.com
                                           Simon Franzini (Cal. Bar No. 287631)
                                           simon@dovel.com
                                           DOVEL & LUNER, LLP
                                           201 Santa Monica Blvd., Suite 600
                                           Santa Monica, California 90401
                                           Telephone: (310) 656-7066
                                           Facsimile: (310) 656-7069

                                           *Counsel for Plaintiff*